UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| ELI WILNER & CO. INC and ELI WILNER<br><br>*Plaintiffs*,<br><br>v.<br><br>TITANZ LLC; BTM HOLDINGS, LLC;<br>THE BETTER CHOICE LENDERS, LLC; and<br>TEDDY ISHAK; THOMAS ISHAK;<br>and IAN LERNER,<br><br>*Defendants*. | Civ. A. No.: |

## COMPLAINT

Plaintiffs, Eli Wilner & Co. Inc and Eli Wilner (collectively, "Plaintiffs"), allege as against Defendants, Titanz LLC, The Better Choice Lenders, LLC, Teddy Ishak, Thomas Ishak, and Ian Lerner, (collectively "Defendants"), as follows:

## NATURE OF THE ACTION

1.      This is a RICO action against multiple entities and individuals who have conspired to carry out a long-running scheme to collect upon unlawful debts and otherwise fraudulently obtain funds from Plaintiff, Eli Wilner, and his company, Eli Wilner & Co. Inc.

2.      From July of 2021 through August of 2023, Defendants entered into at least fourteen (14) loans with Eli Wilner & Co. Inc., using assets of the company as security (located in New York), and requiring Wilner to personally guarantee each one.  At least, thirteen (13) of the loans had interest rates ranging from 32% to over 800%, all clearly exceeding the maximum 25% permitted under New York Penal Law §190.40.

3.      In addition to charging criminally usurious interest, a Class D felony under New York law, Defendants used extortionate mafioso-style tactics, including the implicit threat of violence, to collect upon the unlawful debts.  *See, e.g.,* **Ex. A**.

4.      The mastermind of this RICO Enterprise is Teddy Ishak, and he used his brother Thomas Ishak, and brother-in-law, Ian Lerner, and their companies, Titanz LLC and The Better Choice Lenders, LLC, to accomplish the predatory and illegal goal of the RICO Enterprise of criminal loansharking.

5.      The unlawful conduct at issue here is as brazen as it gets.  Unlike the predatory merchant cash advance industry, which at least attempts to masquerade the transaction as a sale of receivables, the RICO Enterprise here does not even attempt to hide the true nature of the transaction by actually papering the transactions as criminally usurious loans.  *Cf. Fleetwood Servs., LLC v. Richmond Capital Grp. LLC*, 2023 U.S. App. LEXIS 14241, *3 (2d Cir. June 8, 2023) (affirming summary judgment for collection of unlawful debt under RICO); *Davis v. Richmond Capital Group*, 194 A.D.3d 516, 517 (1st Dep't 2021) (upholding RICO claims for collection of an unlawful debt); *Haymount Urgent Care PC v. GoFund Advance, LLC*, 609 F. Supp. 3d 237 (S.D.N.Y. 2022) (same); *Lateral Recovery LLC v. Queen Funding LLC*, 2022 U.S. Dist. LEXIS 129032, *12-13 (S.D.N.Y. July 20, 2022) (same); *Lateral Recovery, LLC v. Cap. Mech. Servs. LLC.*, 632 F. Supp. 3d 402 (S.D.N.Y. 2022) (same); *New Y-Capp v. Arch Cap. Funding LLC*, 2022 U.S. Dist LEXIS 180309, *13 (S.D.N.Y. Sept. 30, 2022) (same); *see also People v. Richmond Capital Group LLC*, 2023 NYLJ LEXIS 2487 (Sup. Ct. Sept. 20, 2023) (permanently enjoining a group of predatory lenders and their companies from engaging in any financial transaction nationwide due to their persistent violation of New York's usury laws).

6.      In total, the Enterprise lent Plaintiffs $1million and collected over $1.7 million. Under the well-settled law of this District, Plaintiffs have suffered RICO damages of at least $600,000, and are thus, entitled to $2.1 million in damages when trebled under RICO, plus all attorney's fees and costs of this litigation.  *See Fleetwood Servs., LLC v. Ram Capital Funding, LLC*, 2022 U.S. Dist. LEXIS 148032, *8 (S.D.N.Y. Aug. 17, 2022) (J. Liman).

7.      Incredibly, despite making over $700,000 from Plaintiffs, Defendants continue to demand over $1 million in additional criminally usurious interest.  In fact, as early as this week, Defendant Lerner sent a text message to Plaintiff Wilner demanding to speak with him about the outstanding debt.  Thus, in addition to seeking compensatory damages for the unlawful interest collected by Defendants, Plaintiffs are also entitled to treble the attorney's fees incurred in bringing this lawsuit to enjoin the collection of the unlawful debt. *See Stochastic Decisions, Inc. v. DiDomenico*, 995 F.2d 1158, 1167 (2d Cir. 1993) (holding "legal fees may constitute RICO damages when they are proximately caused by a RICO violation."); *Bankers Trust Co. v. Rhoades*, 859 F.2d 1096, 1105 (2d Cir. 1988) (allowing recovery of legal fees incurred in fighting defendants' RICO scheme).

8.      It is against this backdrop that Plaintiffs file this Complaint.

## THE PARTIES

9.      Plaintiff, Eli Wilner & Co. Inc., is a corporation duly organized under the laws of New York, with its principal place of business located in New York, New York.

10.     Plaintiff, Eli Wilner, is an individual resident and citizen of Connecticut.

11.     Defendant, Titanz LLC, is a limited liability company organized and existing under the laws of the State of Delaware with its principal offices located at 3838 Bedford Avenue, Brooklyn, N.Y. 11229.

32179817v.1

12.      Defendant, BTM Holdings, LLC, is a limited liability company organized and existing under the laws of the State of Delaware with its principal offices located at 1496 Ocean Parkway, Brooklyn, N.Y. 11230.

13.      Defendant, The Better Choice Lenders, LLC, is a limited liability company organized and existing under the laws of the State of New Jersey with its principal offices located at 101 Crawfords Corner Road, STE 1401, Holmdel, New Jersey 07733.

14.      Defendant, Teddy Ishak, LLC, and is a resident and citizen of New York.

15.      Defendant, Tom Ishak, is the owner of Defendant, The Better Choice Lenders, LLC and is a resident and citizen of New Jersey.

16.      Defendant, Ian Lerner, is the owner of Defendant, Titanz LLC, and is a resident and citizen of New York.

## JURISDICTION

17.      This Court has subject-matter jurisdiction over this dispute pursuant to 28 U.S.C. § based on Plaintiffs' claims for violations of the Racketeering Influenced and Corruption Organizations Act, 18 U.S.C. §§ 1961-68.

18.      Venue is proper in this District pursuant to 28 U.S.C. § 1391(b)(2) because a substantial part of the events or omissions giving rise to this action occurred here.

19.      Defendants are subject to the personal jurisdiction of this Court because Defendants reside here, regularly transact business within the State of New York, and/or have purposefully availed themselves of the jurisdiction of this Court for the specific transactions at issue.

## FACTUAL BACKGROUND

20.      In the Spring of 2021, due to the Covid-19 pandemic, Plaintiff, Eli Wilner, was looking for a business loan for his company, Plaintiff, Eli Wilner & Co., Inc.

21.     Enter Defendant Teddy Ishak.

22.     Mr. Ishak presented himself as someone who could secure a loan for Plaintiffs with "favorable terms."

23.     Initially, the interactions between Plaintiffs and Mr. Ishak were exclusively through verbal communications, but as the relationship grew, Mr. Ishak began communicating through emails with the terms of the loans.

24.     The first agreement between Plaintiffs and Mr. Ishak was executed on July 9, 2021.

25.     Since that time, through Mr. Ishak, a total of fourteen (14) agreements have been entered into between Plaintiffs and Defendants (collectively the "Agreements").

**A.  The Agreements.**

**The July 9, 2021 BTM Holdings Agreement.**

26.     Under the July 9, 2021 Agreement, Defendants, through BTM Holdings, loaned $20,000.00 to Plaintiffs. **Ex. B**.

27.     Plaintiffs were to repay Defendant, BTM Holdings $30,240.00 over the course of eight (8) weeks, which on its face, translates into an annual interest rate of 332%. *Id.*

**The September 14, 2021 BTM Holdings Agreement.**

28.     Under the September 14, 2021 Agreement, Defendants, through BTM Holdings, loaned $23,000.00 to Plaintiffs. **Ex. C**.

29.     Plaintiffs were to repay Defendant, BTM Holdings $34,500.00 over the course of twelve (12) weeks, which on its face, translates into an annual interest rate of 216.6%. *Id.*

**The November 4, 2021 BTM Holdings Agreement.**

30.     Under the November 4, 2021 Agreement, Defendants, through BTM Holdings, loaned $40,000.00 to Plaintiffs. **Ex. D**.

31.     Plaintiffs were to repay Defendant, BTM Holdings $60,000.00 over the course of sixteen (16) weeks, which on its face, translates into an annual interest rate of 185.7%.

32.     However, Defendants required Plaintiffs to take out another loan, detailed below, in order to payoff this one. Instead of paying this loan back over the course of sixteen (16) weeks, Plaintiffs ended up paying the November 4, 2021 loan in only three (3) weeks time. This translates to an interest rate of 866.6%.

**The November 24, 2021 BTM Holdings Agreement.**

33.     Under the November 24, 2021 Agreement, Defendants, through BTM Holdings, loaned $160,000.00 to Plaintiffs. **Ex. E**.

34.     Plaintiffs were to repay Defendant, BTM Holdings $240,000.00 over the course of twenty-eight (28) weeks, which on its face, translates into an annual interest rate of 92.8%.

**The March 24, 2021 BTM Holdings Agreement.**

35.     Under the March 24, 2021 Agreement, Defendants, through BTM Holdings, loaned $240,000.00 to Plaintiffs. **Ex. F**.

36.     Plaintiffs were to repay Defendant, BTM Holdings $360,000.00 over the course of thirty-six (36) weeks, which on its face, translates into an annual interest rate of 72.2%.

**The June 22, 2022 BTM Holdings Agreement.**

37.     Under the June 22, 2022 Agreement, Defendants, through BTM Holdings, loaned $106,000.00 to Plaintiffs. **Ex G**.

38.     Plaintiffs were to repay Defendant, BTM Holdings either $120,000.00 over the course of two (2) weeks, which on its face, translates into an annual interest rate of 344%, or repay $140,000.00 over the course of four (4) weeks, which on its face, translates into an annual interest rate of 418%.

32179817v.1

#### The August 18, 2022 BTM Holdings Agreement.

39.     Under the August 18, 2022 Agreement, Defendants, through BTM Holdings, loaned $250,000.00 to Plaintiffs. **Ex. H**.

40.     Plaintiffs were to repay Defendant, BTM Holdings $375,000.00 over the course of thirty (30) months, which on its face, translates into an annual interest rate of 20%.

#### The October 26, 2022 BTM Holdings Agreement.

41.     Under the October 26, 2022 Agreement, Defendants, through BTM Holdings, loaned $250,000.00 to Plaintiffs. **Ex. I**.

42.     Plaintiffs were to repay Defendant, BTM Holdings $426,250.00 over the course of thirty-six (36) weeks, which on its face, translates into an annual interest rate of 79.4%.

#### The January 4, 2023 BTM Holdings Agreement.

43.     Under the January 4, 2023 Agreement, Defendants, through BTM Holdings, loaned $150,000.00 to Plaintiffs. **Ex. J**.

44.     Plaintiffs were to repay Defendant, BTM Holdings $350,000.00 over the course of twenty-seven (27) weeks, which on its face, translates into an annual interest rate of 259.7%. *Id.*

#### The February 10, 2023 BTM Holdings Agreement.

45.     Under the February 10, 2022 Agreement, Defendants, through BTM Holdings, loaned $60,000.00 to Plaintiffs.  **Ex. K**.

46.     Plaintiffs were to repay Defendant, BTM Holdings $81,000.00 over the course of 30 days, which on its face, translates into an annual interest rate of 425.8%.

#### The April 12, 2023 Titanz LLC Agreement.

47.     Under the April 12, 2023 Agreement, Defendants, through Titanz LLC, loaned $504,000.00 to Plaintiffs.  **Ex. L**.

48.     Plaintiffs were to repay Defendant, Titanz LLC $750,000.00 over the course of seventy-eight (78) weeks, which on its face, translates into an annual interest rate of 32.54%. *Id.*

**The May 18, 2023 Titanz LLC Agreement.**

49.     Under the May 18, 2023 Agreement, Defendants, through Titanz LLC, loaned $150,000.00 to Plaintiffs. **Ex. M**.

50.     Plaintiffs were to repay Defendant, Titanz LLC $225,030.00 over the course of seventy-eight (78) weeks, which on its face, translates into an annual interest rate of 33.33%. *Id.*

**The July 20, 2023 BMT Holdings Agreement.**

51.     Under the July 20, 2023 Agreement, Defendants, through BMT Holdings, loaned $60,000.00 to Plaintiffs. **Ex. N**.

52.     Plaintiffs were to repay Defendant, BMT Holdings $90,000.00 over the course of twenty-four (24) weeks, which on its face, translates into an annual interest rate of 108.33%. *Id.*

**The August 1, 2023 Titanz LLC Agreement.**

53.     Under the August 1, 2023 Agreement, Defendants, through Titanz LLC, loaned $100,000 to Plaintiffs. **Ex. O**.

54.     Plaintiffs were to repay Defendant, Titanz LLC $150,000 over the course of two (2) months, which on its face, translates into an annual interest rate of 304.1%. *Id.*

**B.  Defendants' Collection Tactics**

55.     Most of the loans were motivated by the need to pay off the previous loans taken out by Plaintiffs through Mr. Ishak.

56.     During the period that the above-mentioned loans were executed, Mr. Ishak repeatedly made claims to Plaintiff, Eli Wilner, that the loans were being made possible through the cooperation and funding by one of the chief mafia leaders in Brooklyn.

57.     Mr. Ishak claimed that he was a "close friend" of this alleged mafia figure. *Id*.

58.     When the loan repayments were delayed, Mr. Ishak repeatedly threatened that the mafia would "find" Plaintiff, Eli Wilner, and his family, as well as Mr. Ishak himself and his family. *Id*.

59.     Additionally, Mr. Ishak threatened that Plaintiff, Eli Wilner, would have his house taken and rented out to secure funds towards the outstanding payments.

60.     On November 13, 2023, Mr. Ishak sent the following ominous email to Plaintiff, Eli Wilner:

> Dear Eli, I don't know where to start. I know you are under tremendous pressure as am I. I thought we had a better relationship then [sic] this. You would say I'm your brother and that I helped you so many times. I went to the mat for you and believed in you and still do but for you to leave me on an island myself isn't right. I've had to deal with this all by myself even though you are the one who borrowed the money. ***I spoke to them last week and they want to work this out with you for my sake and yours.*** I implore you to please don't do this to me and my family and give me a call so we can work together to figure this out. My entire life and family is on the line here. We can figure this out. Please Eli be the Eli that I know you are.

**Ex. P** (emphasis added).

61.     Following up on this email, Mr. Ishak sent threatening text messages to Plaintiff, Eli Wilner & Co. employee, Sean Morello:

> Hi Sean just want to give you heads up that Eli and Larry have put you in the middle of this also so you ***should be expecting a call from some people*** // Sorry that they dealt with this they [sic] the way they are but now I must give them what they want // They want to know all the players involved in this[.]

**Ex. Q** (emphasis added).

62.     During this period, Mr. Ishak issued additional verbal and written threats to Plaintiff, Eli Wilner, and to his associate and advisor, Mr. Lawrence Pomerantz.

32179817v.1

63.     To date, Plaintiffs have paid $1,703,385.00 to Defendants under the aforementioned loans.

64.     Even after paying this extraordinary amount, Defendants, through Teddy Ishak, continue to threaten and use intimidation tactics in an attempt to get another $1,000,000 out of Plaintiffs.

65.     Even to this day, Defendants are still reaching out to associates of Plaintiff, Eli Wilner, in attempts to collect on the above-mentioned usurious loans.

66.     As a result of the constant threats and pressure exerted onto Plaintiff, Eli Wilner, by Mr. Ishak, Mr. Wilner has and continues to suffer from post-traumatic stress.

### FIRST CAUSE OF ACTION
### (RICO: 18 U.S.C. § 1962)

67.     Plaintiffs repeat and re-allege the allegations of each of the foregoing paragraphs.

**A.      The Unlawful Activity.**

68.     More than a dozen states, including New York, place limits on the amount of interest than can be charged in connection with providing a loan.

69.     In 1965, the Legislature of New York commissioned an investigation into the illegal practice of loansharking, which, prior to 1965, was not illegal with respect to businesses.

70.     As recognized by the New York Court of Appeals in *Hammelburger v. Foursome Inn Corp.*, 54 N.Y.2d 580, 589 (1981), the Report by the New York State Commission on Investigation entitled An Investigation of the Loan-Shark Racket (the "Report") brought to the attention of the Governor and the public the need for change in both, as well as for change in the immunity statute, and for provisions making criminal possession of loan-shark records and increasing the grade of assault with respect to the "roughing up tactics" used by usurious lenders to enforce payment.

32179817v.1

71.     As a result of this Report, a bill was proposed to allow corporations to interpose the defense of usury in actions to collect principal or interest on loans given at interest greater than twenty-five percent per annum.

72.     This measure was deemed vital in curbing the loan-shark racket as a complement to the basic proposal creating the crime of usury.

73.     Among other things, the Report recognized that "it would be most inappropriate to permit a usurer to recover on a loan for which they could be prosecuted.

**B.     Culpable Persons.**

74.     Teddy Ishak, Tom Ishak, and Ian Lerner are "persons" within the meaning of 18 U.S.C. § 1961(3) and 18 U.S.C. § 1962(c) in that each is either an individual, corporation or limited liability company capable of holding a legal interest in property (the "RICO Persons").

75.     At all relevant times, Teddy Ishak, Tom Ishak, and Ian Lerner were, and are, persons that exist separate and distinct from the Enterprise, described below.

76.     Teddy Ishak is the mastermind of the Enterprise.

77.     Ian Lerner is the owner of Defendants, Titanz LLC and BMT Holdings, LLC.

78.     Per the company's website, Tom Ishak is the President and CEO of The Better Choice Lenders, LLC.

79.     Per the company's website, Ian Lerner is the President of The Better Choice Lenders, LLC.

80.     The Better Choice Lenders, LLC, Tom Ishak, and Ian Lerner provide funding for the loans (collectively the "Investors").

32179817v.1

81.     Through their operations of Titanz LLC, BMT Holdings, LLC and The Better Choice Lenders, LLC, the RICO persons solicit, underwrite, fund, service and collect upon unlawful debt incurred by small businesses in states that do not have usury laws.

**C.     The Enterprise.**

82.     Titanz LLC, BTM Holdings, LLC, The Better Choice Lenders, LLC,  Teddy Ishak, Tom Ishak, and Ian Lerner constitute an Enterprise (the "Enterprise) within the meaning of 18 U.S.C. §§ 1961(4) and 1962(c).

83.     Titanz LLC, BTM Holdings, LLC, The Better Choice Lenders, LLC, Teddy Ishak, Tom Ishak, and Ian Lerner are associated in fact and through relations of ownerships for the common purpose of carrying an ongoing unlawful enterprise. Specifically, the Enterprise has a common goal of soliciting, funding, servicing and collecting upon usurious loans that charge interest at more than twice the enforceable rate under the laws of New York and other states.

84.     Since at least 2022 and continuing through the present, the members of the Enterprise have had ongoing relations with each other through common control/ownership, shared personnel and/or one or more contracts or agreements relating to and for the purpose of originating, underwriting, servicing and collecting upon unlawful debt issued by the Enterprise to small businesses throughout the United States.

85.     The debt, including such debt evidenced by the Agreements, constitutes unlawful debt within the meaning of 18 U.S.C. § 1962(c) and (d) 18 U.S.C. § 1961(6) because (i) it violates applicable criminal usury statutes; and (ii) the interest rate exceeds the legal rate permitted under New York Penal Law §190.40.

**D.** **The Roles of the RICO Persons in Operating the Enterprise, and the roles of the individual companies within the Enterprise.**

86.     The RICO Persons have organized themselves and the Enterprise into a cohesive group with specific and assigned responsibilities and a command structure to operate as a unit in order to accomplish the common goals and purposes of collecting upon unlawful debts including as follows:

**i.** **Teddy Ishak.**

87.     Teddy Ishak is the mastermind of the Enterprise. He is responsible for the day-to-day operations of the Enterprise and has final say on all business decisions of the Enterprise including, without limitation, which usurious loans the Enterprise will fund, how such loans will be funded, which of the Investors will fund each loan and the ultimate payment terms, and the amount and period of each usurious loan.

88.     In his capacity as the mastermind of the Enterprise, Teddy Ishak is responsible for creating, approving and implementing the policies, practices and instrumentalities used by the Enterprise to accomplish its common goals and purposes including: (i) the form of the agreements used by the Enterprise; and (ii) the method of collecting payments on the agreements, which in some cases, as in this case, were in the form of threats of violence. **Ex A**.

89.     Teddy Ishak has also taken actions and, directed other members of the Enterprise to take actions necessary to accomplish the overall goals and purposes of the Enterprise including directing the affairs of the Enterprise, funding the Enterprise, directing members of the Enterprise to collect upon the unlawful loans and executing legal documents in support of the Enterprise.

90.     Teddy Ishak has ultimately benefited from the Enterprise's funneling of the usurious loan proceeds to his personal bank account(s).

-13-

### ii.     Titanz LLC.

91.     Titanz LLC is organized under the laws of Delaware and maintains officers, books, records, and bank accounts independent of BTM Holdings, LLC, The Better Choice Lenders, LLC, Teddy Ishak, Tom Ishak, and Ian Lerner.

92.     Ian Lerner has operated Titanz LLC as part of an unlawful enterprise to collect upon unlawful debt. Pursuant to its membership in the Enterprise, Titanz LLC has: (i) pooled the funds of the Investors in order to fund each usurious loan; (ii) underwritten the usurious loans and determined the ultimate rate of usurious interest to be charged under each loan; (iii) entered into agreements on behalf of the enterprise; (iv) serviced the usurious loans; and (v) set-up and implemented the Enterprise's collection practices to collect upon the unlawful debt.

93.     In this case, Titanz LLC, through Ian Lerner: (i) solicited borrowers; (ii) pooled funds from the Investors (iii) underwrote the Agreements; (iv) entered into the Agreements; and (v) collected upon the unlawful debt evidenced by the Agreements.

### iii.     BTM Holdings, LLC.

94.     BTM Holdings, LLC is organized under the laws of Delaware and maintains officers, books, records, and bank accounts independent of Titanz LLC, The Better Choice Lenders, LLC, Teddy Ishak, Tom Ishak, and Ian Lerner.

95.     Ian Lerner has operated BTM Holdings, LLC as part of an unlawful enterprise to collect upon unlawful debt. Pursuant to its membership in the Enterprise, BTM Holdings, LLC has: (i) pooled the funds of the Investors in order to fund each usurious loan; (ii) underwritten the usurious loans and determined the ultimate rate of usurious interest to be charged under each loan; (iii) entered into agreements on behalf of the enterprise; (iv) serviced the usurious loans; and (v) set-up and implemented the Enterprise's collection practices to collect upon the unlawful debt.

96.     In this case, BTM Holdings, LLC: (i) solicited borrowers; (ii) pooled funds from the Investors, (iii) underwrote the Agreements; (iv) entered into the Agreements; and (v) collected upon the unlawful debt evidenced by the Agreements.

**iv.     The Investors**

97.     The Better Choice Lenders, LLC, Tom Ishak, and Ian Lerner are investors who maintain separate officers, books, records, and bank accounts independent of Titanz LLC, BTM Holdings, LLC and Teddy Ishak.

98.     Directly and through their members, agent officers, and/or employees, the Investors have been and continue to be responsible for providing Titanz LLC, BTM Holdings and Teddy Ishak with all or a portion of the pooled funds necessary to fund the usurious loans, including the Agreements, and to approve and ratify the Enterprise's efforts to collect upon the unlawful debts by, among other things, approving early payoff terms, settlement agreements and other financial arrangements with borrowers to collect upon the unlawful debt.

99.     The Investors ultimately benefit from the Enterprise's unlawful activity when the proceeds of collecting upon the unlawful debts are funneled to the Investors according to their level of participation in the usurious loans.

**E.     Interstate Commerce.**

100.     The Enterprise is engaged in interstate commerce and uses instrumentalities of interstate commerce in its daily activities.

101.     Specifically, the members of the Enterprise maintain offices in New York and New Jersey and use personal in those offices to originate, underwrite, fund, service and collect upon the usurious loans made by the Enterprise to entities in New York, including Plaintiffs, and throughout the United States via extensive use of interstate emails, mail, and wire transfers.

102.     In the present case, all communications and interactions between the members of the Enterprise and Eli Wilner & Co. Inc were by interstate email and mail, interstate wire transfers and other interstate wire communications. Specifically, the Enterprise used interstate emails to originate, underwrite, service and collect upon the Agreements, fund the advances under each of the Agreements and collect the Payments via interstate wire transfers.

**F.     Injury and Causation.**

103.     Plaintiffs have and will continue to be injured in their business and property by reason of the Enterprise violations of 18 U.S.C. § 1962(c).

104.     The injuries to the Plaintiffs are directly, proximately, and reasonably foreseeably resulting from or caused by these violations of but are not limited to, over one million dollars in improperly collected criminally usurious loan payments.

105.     Plaintiffs have also suffered damages by incurring attorneys' fees and costs associated with exposing and prosecuting Defendants' criminal activities.

106.     Pursuant to 18 U.S.C. § 1964(c), Plaintiffs are entitled to treble damages, plus costs and attorneys' fees from Defendants.

**SECOND CAUSE OF ACTION**
**(Conspiracy under 18 U.S.C. § 1962(d))**

107.     Plaintiffs repeat and re-allege the allegations of each of the foregoing paragraphs.

108.     Defendants have unlawfully, knowingly, and willfully, combined, conspired, confederated, and agreed together to violate 18 U.S.C. § 1962(c) as described above, in violation of 18 U.S.C. § 1962(d).

109.     By and through each of the Defendants' business relationships with one another, their close coordination with one another in the affairs of the Enterprise, and frequent email communications among the Defendants concerning the underwriting, funding, servicing, and

collection of the unlawful loans, including the Agreements, each Defendant knew the nature of the Enterprise, and each Defendant knew that the Enterprise extended beyond each Defendant's individual role. Moreover, through the same connections and coordination, each Defendant knew that the other Defendants were engaged in a conspiracy to collect upon unlawful debts in violation of U.S.C. § 1962(c).

110.    Each Defendant agreed to facilitate, conduct, and participate in the conduct, management, or operation of the Enterprise's affairs in order to collect upon unlawful debts, including the Agreements.

111.    The participation and agreement of each Defendant was necessary to allow the commission of the scheme.

112.    Plaintiffs have been and will continue to be injured in their business and property by reason of the Defendants' violations of 18 U.S.C. § 1962(d).

113.    The injuries to the Plaintiffs directly, proximately, and reasonably foreseeably resulting from or cause these violations of 18 U.S.C. § 1962(d) include, but are not limited to, millions of dollars of improperly collected loan payments.

114.    Plaintiffs have also suffered damages by incurring attorneys' fees and costs associated with exposing and prosecuting Defendants' criminal activities.

115.    Pursuant to 18 U.S.C. § 1964(c), Plaintiffs are entitled to treble damages, plus costs and attorneys' fees from Defendants.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs demand judgment in their favor against Defendants, jointly and severally, and seek an Order:

a)    Declaring each of Plaintiffs' agreements with Defendants to be a usurious loan in violation of New York Penal Law §190.40 and thus void and unenforceable;

b)   Awarding compensation, direct, and consequential damages, including prejudgment interest, in an amount no less than $700,000.00;

c)   Awarding treble damages, including all money, fees and interest wrongfully charged to Plaintiffs, in an amount no less than $2,100,000.00;

d)   Requiring Defendants to pay Plaintiffs' attorneys' fees and costs, and trebling as further damages; and

e)   Any further relief deemed appropriate by the Court.

Dated: December 21, 2023

**WHITE AND WILLIAMS LLP**

By:  _____

Shane R. Heskin
7 Times Square, STE 29
New York, NY 10036
(215) 864-7000
heskins@whiteandwilliams.com

Attorneys for Plaintiffs